# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> vs. <br><br> ERIC THOMAS, <br><br> Defendant. | No. 23-CR-1012-LTS-MAR <br><br> **ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION REGARDING MOTION TO SUPPRESS** |

## I. INTRODUCTION

This case is before me on a Report and Recommendation (R&R) in which United States Magistrate Judge Mark A. Roberts recommends that I deny defendant Eric Thomas' motion (Doc. 22) to suppress. Doc. 32. Thomas filed timely objections (Doc. 41).

## II. BACKGROUND

### A. *Procedural History*

On April 19, 2023, the Grand Jury returned an indictment (Doc. 2) charging Thomas with possession of a firearm by a prohibited person. Thomas filed his motion (Doc. 22) to suppress on June 8, 2023, and the Government filed its resistance (Doc. 27) on June 15, 2023. Judge Roberts held a suppression hearing on June 21, 2023.[1] Doc. 31. The Government presented testimony from Dubuque Police Officer Brian Wullweber and Dubuque Police Investigator Chad Leitzen, along with the following exhibits:

1. Search Warrant Documents (Doc. 27-2);

---

[1] The hearing transcript is available at Doc. 35.

2. Search Warrant Documents (Doc. 27-3);

3. Aerial photo (Doc. 27-4); and

4. Video of interview with Thomas.

*Id*. Thomas submitted the following, additional exhibits:

A. Search Warrant Documents (Doc. 23);

B. Traffic Camera Footage; and

C. Search Warrant Documents (Doc. 30).

*Id*.

### *B.  Relevant Facts*

Section III of the R&R contains detailed findings of fact. Doc. 32 at 4-13. Thomas has raised no objections to those findings. Doc. 41. Instead of repeating those findings in this order, they are incorporated herein and will be referenced as necessary in my discussion of Thomas' objections.

## III.  STANDARD OF REVIEW

A district judge must review a magistrate judge's R&R under the following standards:

> Within fourteen days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b). Thus, when a party objects to any portion of an R&R, the district judge must undertake a de novo review of that portion.

Any portions of an R&R to which no objections have been made must be reviewed under at least a "clearly erroneous" standard. *See, e.g.*, *Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting that when no objections are filed "[the district court judge] would only have to review the findings of the magistrate judge for clear error"). As the Supreme Court has explained, "[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). However, a district judge may elect to review an R&R under a more-exacting standard even if no objections are filed:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 150 (1985).

## IV. DISCUSSION

Thomas objects to the following conclusions in the R&R: (1) the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant for Thomas' residence, (2) there was a fair probability that contraband would be found at Thomas' residence and that a nexus existed between Thomas, drugs and Thomas' residence and (3) the *Leon* good-faith exception applies. I will address these issues in turn.

### A. Probable Cause

Judge Roberts summarized the information contained in the search warrant affidavit as follows:

> (1) A CS told Investigator Leitzen that an individual identified as "E" (and known to Investigator Leitzen as Defendant) was Vandermillen's heroin supplier; (2) the CS also noted that even though Vandermillen participated in a controlled drug buy from Defendant several years ago, Defendant continued to sell drugs to Vandermillen and Investigator Leitzen indicated he was familiar with Defendant from an undercover drug buy; (3) a CI told Investigator Leitzen that Defendant, also identified as "E" by the CI, regularly sold heroin and lived somewhere near Hill Street; (4) the CI also told Investigator Leitzen that Defendant was in a relationship with McDougal, a known drug user and drug dealer with a criminal history of multiple drug related convictions; (5) on January 19, 2023 and January 20, 2023, McDougal's vehicle, sometimes driven by Defendant, traveled multiple times between the Days Inn, where McDougal was living and where Officer Wullweber's canine alerted for drugs on an open air sniff outside the door to McDougal's hotel room, and Defendant's residence; (6) on September 9, 2022, Defendant was arrested on an outstanding warrant and was found in possession of three individual bags of heroin and drug paraphernalia in a search incident to his arrest; (7) Defendant's criminal history also included a conviction for a controlled substance violation in 2014; (8) on January 23, 2023, traffic cameras showed Vandermillen stopping outside Defendant's residence, an individual matching Defendant's description opening Vandermillen's car door, leaning into the car for 30 seconds and then walking back to Defendant's residence, which Officer Wullweber found these actions to be consistent with a drug deal; (9) after meeting with Defendant, Vandermillen immediately met Brian Woods and six minutes later Dubuque dispatch received a 911 call regarding Brian Woods overdosing on drugs; and (10) law enforcement officers observed Defendant on multiple occasions in front of, leaving, and/or entering the West 8th Street residence.

Doc. 32 at 21-22. Based on my de novo review, I agree with Judge Roberts that the magistrate had a substantial basis for concluding that probable cause existed to issue the search warrant for Thomas' residence. The affidavit contained significant evidence that Thomas was engaged in drug use or drug distribution when the search warrant was issued. Among other things, the interaction between Thomas and Vandermillen outside Thomas' residence supported a finding of probable cause. Wullweber stated in his affidavit that, based on his training and experience, this interaction was consistent with a drug deal. Doc. 27-2 at 12-13. Law enforcement officials and judges may make reasonable

4

inferences in their respective duties of preparing affidavits for, and deciding to issue, warrants. *United States v. Augard,* 954 F.3d 1090, 1094-95 (8th Cir. 2020). Here, an inference that evidence of drug dealing would likely be at Thomas' residence, where he was observed executing an apparent drug deal, was reasonable and justified. This objection is overruled.

### B.  *Fair Probability and Nexus*

Thomas also objects to Judge Roberts' conclusion that there was a fair probability that contraband would be found at Thomas' residence and that the search warrant application established an adequate nexus between his residence and contraband. Doc. 41 at 3. Judge Roberts reasoned:

> Furthermore, I find a nexus existed between Defendant, drugs, and Defendant's residence. As discussed above, the affidavit contains information regarding Defendant's drug history (controlled buy involving Defendant in 2013, Defendant's drug conviction in 2014, and three baggies of heroin found on Defendant's person incident to arrest in September 2022), Defendant's relationship with McDougal, a known drug user and drug distributor who had drugs and drug paraphernalia in her room at Days Inn which Defendant frequented and McDougal frequented Defendant's residence, a CS and a CI identifying Defendant as someone who sells heroin, and observation via traffic camera video of a drug deal between Defendant and Vandermillen outside Defendant's residence. Taken together, I find that the affidavit provided evidence of a nexus between Defendant, drugs, and Defendant's residence. *See Randle,* 39 F.4th at 536.

Doc. 32 at 23. Based on my de novo review, I agree. There was sufficient information in the affidavit to establish a nexus between Thomas, drugs and Thomas' residence. Again, the activity consistent with a drug deal between Thomas and Vandermillen, outside Thomas' residence, is particularly persuasive in reaching this determination.

As part of his objection to the probable cause and nexus findings, Thomas renews his argument that information from the CI and CS was unreliable. Doc. 41 at 1.  I disagree.  The CS's identity remained undisclosed for safety reasons, but information the

5

CS previously supplied had led to two arrests. The CI also remained anonymous for safety reasons but had previously supplied information that led to three arrests. This track record of providing useful information weighs in favor of their reliability. In addition, I agree with Judge Roberts that law enforcement properly corroborated the information that the CI and CS had supplied.

Relying on *United States v. Lopez-Zuniga,* 909 F.3d 906 (8th Cir. 2018), Thomas also renews his argument that his contacts with McDougal and Vandermillen did not support probable cause. Doc. 41 at 1. In *Lopez-Zuniga,* the defendant went to the mall and a restaurant with a known drug trafficker and later dropped the drug trafficker off at the trafficker's residence. *Lopez-Zuniga,* 909 F.3d at 909. The court held that these innocent contacts did not establish probable cause. *Id.* at 909-10. However, Thomas' contacts with McDougal and Vandermillen are more significant than those present in *Lopez-Zuniga*. Thomas was in a romantic relationship with McDougal and officers observed him in several interactions with her over the course of their investigation, including driving to a hotel at which evidence of drug activity had been discovered in her room. Thomas was also observed in an apparent drug deal with Vandermillen, activity that is distinguishable from the innocent contacts at issue in *Lopez-Zuniga*. This information supported the magistrate's determination that there was a fair probability that contraband would be found at Thomas' residence.

Next, Thomas cites a Sixth Circuit case, *United States v. Brown,* 828 F.3d 375 (6th Cir. 2016), to challenge Judge Roberts' determination that there was an adequate nexus between Thomas' residence and contraband. Doc. 41 at 3-4. In *Brown,* the court held there was no probable cause to search a residence when the search warrant application failed to include any references to illegal activity at that residence. *Brown,* 828 F.3d at 385. The court reasoned that the search warrant application "contained no evidence that Brown distributed narcotics from his home, that he used it to store narcotics, or that any suspicious activity had taken place there." *Id.* at 382. Thomas contends that the lack of adequate nexus in *Brown* is analogous to his case. I disagree. In *Brown*, it

6

was important that the search warrant application did not link Brown's residence to any suspicious activity. Here, the search warrant application included significant evidence linking Thomas' residence to suspicious activity, including an apparent drug deal with Vandermillen outside of his residence. This provides the proper nexus between Thomas' residence and contraband that was lacking in *Brown*.

Thomas also renews his argument that the warrant lacked probable cause because the traffic cameras did not show him entering or leaving the West 8th Street residence and the CI stated he lived on Hill Street, not West 8th Street. Doc. 41 at 1. Judge Roberts stated:

> Government Ex. 3 shows that Defendant's West 8th Street Residence is at the intersection/corner of Hill Street. While the traffic camera video does not specifically show Defendant entering or leaving his residence, traffic camera video showed the Jeep parking outside the residence and Defendant going to the Jeep. The traffic camera video also showed, as explained in the affidavit, McDougal's vehicle, driven by both Defendant and McDougal, coming and going from Defendant's residence, generally to-and-from the Days Inn. (Government Ex. 1 at 11) Furthermore, the affidavit provides that Investigator Leitzen had observed Defendant standing in front of the West 8th Street residence on "numerous occasions." (*Id.* at 10.) The affidavit also provides that on January 23, 2023, Investigator Leitzen observed McDougal go into Defendant's residence. (*Id.* at 13-14) Based on the foregoing, I find that Defendant's argument does not detract from my finding that, based on the totality of circumstances, the magistrate properly determined that there was a fair probability that contraband would be found at Defendant's residence and the magistrate properly found probable cause to issue the search warrant.

Doc. 32 at 29-30. Based on my de novo review, I agree. Taken together, the evidence in the affidavit showed that Thomas lived at the West 8th Street residence and that there was a fair probability that contraband would be found there. This objection is overruled.

C.  *The Leon Exception*

Thomas objects to Judge Roberts' finding that even if the warrant was not supported by probable cause, the exclusionary rule would not apply due to the good-faith

7

exception under *Leon*. Any inadequacy or mistake in the affidavit's information, or the judge's decision to issue a warrant, was not so great "as to render official belief in [the] existence [of probable cause] entirely unreasonable." *United States v. Carpenter,* 341 F.3d 366, 669 (8th Cir. 2003). As explained above, the search warrant contained significant evidence linking Thomas with drug-dealing activity at his residence, making the officers' belief in the existence of probable cause entirely reasonable. This objection is overruled.

## V. CONCLUSION

For the reasons set forth herein:

1. Thomas' objections (Doc. 41) to the R&R are **overruled;**
2. I **accept** the R&R (Doc. 32) without modification, *see* 28 U.S.C. § 636(b)(1);
3. Pursuant to Judge Roberts' recommendation, Thomas' motion (Doc. 22) to suppress is **denied.**

**IT IS SO ORDERED.**

**DATED** this 2nd day of October, 2023.

_____
Leonard T. Strand, Chief Judge